UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE OCASIO and CARMELO
OCASIO,

    Plaintiffs,

v.                          Case No: 8:13-cv-1962-T-36AEP

C.R. BARD, INC. and BARD
PERIPHERAL VASCULAR, INC.,

    Defendants.
_____/

## ORDER

This cause comes before the Court upon the Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s (collectively, "Bard") Motion to Exclude the Opinions of William A. Hyman (Doc. 45), Motion to Exclude the Opinions of Robert McMeeking and Matthew Begley (Doc. 46), and Motion to Exclude the Opinions of Robert Ritchie, Ph.D. (Doc. 51). Plaintiffs Denise Ocasio and Carmelo Ocasio responded in opposition to the Motions (Docs. 65, 64, 66, respectively). Bard replied in further support of its Motions (Docs. 78, 77, 79, respectively). Plaintiffs filed a Notice of Supplemental Authority (Doc. 82). Bard filed three Notices of Supplemental Authority (Docs. 104, 125, 128). On January 21 and February 20, 2015, the Court held evidentiary hearings and oral argument on the Motions. *See* Docs. 95, 112. The following witnesses testified at the hearings: William A. Hyman, Robert Ritchie, and Matthew Begley. Upon due consideration of the parties' submissions, the evidence presented at the hearing, and the oral argument, the Court will GRANT-IN-PART and DENY-IN-PART each of Bard's Motions.

## I. BACKGROUND

This case arises from the injuries suffered by Denise Ocasio as a result of the allegedly defective inferior vena cava ("IVC") filter implanted in her. Briefly, the Complaint alleges that Ms. Ocasio was implanted with a Bard G2®X filter ("G2 filter"); the G2 filter subsequently perforated her IVC; she was forced to undergo surgery to clip the perforating strut; the filter remains implanted in her body; and she suffered and continues to suffer severe medical consequences as a result of the perforation. Plaintiffs seek to offer a number of expert opinions regarding the various alleged defects of the filter, including those of William A. Hyman ("Hyman"), Robert Ritchie ("Ritchie"), and Matthew Begley, Ph.D. ("Begley").

Bard now argues that those experts' opinions should be excluded, for various reasons, under Federal Rule of Evidence 702 and *Daubert*.[1]

## II. LEGAL STANDARD

Rule 702 governs the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert*, the Supreme Court charged district courts with a "gatekeeping function" of "ensur[ing] that any and all scientific testimony or evidence is not only relevant, but reliable." 509 U.S. at 589; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). Accordingly, the admission of such testimony is a matter within the discretion of the

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

district court.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1108 (11th Cir. 2005).  In performing its gatekeeping function, the Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).  The proponent of the challenged expert opinion testimony carries the burden of proving its reliability by a preponderance of the evidence.  *Id.* (citing *Daubert*, 509 U.S. at 592-93 & n.10).

### III.   DISCUSSION

#### A.   William A. Hyman

Hyman offers various opinions as to the adequacy of the design, testing, and labeling of the G2 filter.  Hyman also offers opinions as to Bard's compliance with the FDA regulatory process through which the G2 filter was approved.  Further, Hyman offers opinions summarizing Bard's internal documents, including opinions as to Bard's knowledge, intent, and/or state of mind.

##### 1.   *Opinions regarding the G2 filter's design and testing*

Bard argues first that Hyman is unqualified to opine on the G2 filter's design and testing.  The Court disagrees.  Hyman holds advanced degrees in engineering mechanics, and is a professor of biomedical engineering at Texas A&M University.  Further, as Hyman testified at the hearing, he has worked his entire thirty-plus year career in the area of design, testing, and regulation of medical devices; he has instructed both students and professionals in the medical device industry on the design, testing, and regulation of medical devices and biomaterials; he has written

extensively about medical device design, testing, and regulatory affairs, he has consulted extensively on those subjects; and he actively participates in industry groups concerning the same. The Court finds that Hyman is clearly qualified to opine upon the G2 filter's design and testing.

Bard notes that Hyman lacks training specifically in regard to implantable medical devices, such as IVC filters. The Court recognizes that Hyman's background as a biomedical engineer, standing alone, does not qualify him to opine on every aspect of every conceivable biomedical device. *See, e.g.*, *McCorvey v. Baxter Healthcare Corp.*, Case No. 99-cv-1250, 2001 WL 36393134, at *4 (S.D. Fla. Sept. 30, 2001) (finding a mechanical engineer unqualified to opine on a foley catheter), *aff'd in relevant part by* 298 F.3d 1253 (11th Cir. 2002). Here, however, Hyman's qualifications do not rest solely on the ground that he is a biomedical engineer. Rather, as noted above, Hyman has extensive experience regarding the design and testing of biomedical devices. Thus, although Hyman may not have previously worked specifically on IVC filters, the Court finds that his background and experience is sufficiently relevant to the opinions that he seeks to offer regarding the design and testing of the G2 filter. *Accord Tillman v. C.R. Bard, Inc.*, Case No. 13-cv-222, 2015 WL 1456657, at *15 (M.D. Fla. March 30, 2015); *Cason v. C.R. Bard, Inc.*, Case No. 12-cv-1288, Doc. 112, at 25-28 (N.D. Ga. Feb. 9, 2015) (hereinafter "*Cason*") (Doc. 104-1).

Bard argues that Hyman's opinions regarding the design and testing of the G2 filter should nevertheless be excluded because they are not based on sufficient facts or data, and are not the product of reliable principles and methods. The Court agrees.

To begin with, Hyman failed to test or examine the G2 filter or any other type of IVC filter. Indeed, as Hyman acknowledged, he has never even seen in person or touched the G2 filter or any other IVC filter. The only facts Hyman used to support his opinions were gleaned from documents

selected by Plaintiffs' counsel.  Although that fact does not necessarily mandate the disqualification of his opinions, *see In re Seroquel Prods. Liability Litig.*, Case No. 06-md-1769, 2009 WL 3806436, at *4 (M.D. Fla. July 20, 2009), the Court is concerned with the total lack of *any* independent verification of the data or testing of the device.  The Court accordingly finds that Plaintiffs have failed to establish that Hyman's opinions regarding the design and testing of the G2 filter are based upon sufficient facts or data.  *Accord Tillman*, 2015 WL 1456657 at *17; *Cason* at 30-31.

The Court likewise finds that Plaintiffs have failed to establish that the methodology employed by Hyman was reliable.  Hyman testified that his methodology was as follows: he first reviewed the underlying facts, the known failure modes of the device in question and similar devices, and the relevant medical literature; he then used this information in combination with his existing knowledge and background to compare Bard's approach to what he believed a prudent product manufacturer would have done.  In other words, it appears that Hyman arrived at his opinions based solely upon a comparison of the underlying facts to his own subjective idea of what a prudent manufacturer would have done.  Hyman has failed to articulate any scientific or regulatory bases for his methodology.  He has not developed any test protocols that he believes should have been performed on the device.  There is no objective standard that could be employed to evaluate Hyman's design and testing opinions.  Accordingly, Hyman's design and testing opinions are not the product of sufficiently reliable methodology.  *See* Fed. R. Evid. 702(c), advisory committee notes to 2000 amendments (an expert's methodology is not sufficiently reliable if it is "simply a subjective, conclusory approach that cannot reasonably be assessed for reliability"); *accord Tillman*, 2015 WL 1456657 at *17; *Cason* at 32-34.

### 2. *Opinions regarding the G2 filter's labeling*

Bard argues that Hyman is not qualified to opine upon the adequacy of the G2 filter's labeling. The Court agrees. At the hearing, Hyman testified that he has never drafted a complete Instructions for Use ("IFU") for any medical device. Rather, as Hyman testified at his deposition, he has only had input into and/or commented on pieces of "a few" unspecified IFUs. *See* Doc. 45-2 ("Hyman Dep.") at 26-27, 136. Moreover, Hyman does not have a medical degree or medical experience, so accordingly, he has never personally relied upon an IFU to make a medical decision. Like the courts in *Tillman* and *Cason*, the Court here concludes that Hyman's limited experience in this arena fails to qualify him as an expert on the adequacy of the labeling of the G2 filter. *Accord Tillman*, 2015 WL 1456657 at *16; *Cason* at 28-30. Hyman's opinions regarding the adequacy of the G2 filter's labeling must therefore be excluded.

### 3. *Opinions regarding the FDA regulatory process*

Bard does not challenge Hyman's qualifications as an expert on the FDA regulatory process as it relates to medical devices. Rather, Bard contends that Hyman's opinions regarding FDA regulations and Bard's alleged noncompliance therewith would not be helpful to the jury. The Court disagrees. Expert testimony on this topic would be helpful because, as the court in *Cason* noted, "a lay jury cannot be expected to understand the complex regulatory framework that informs the standard of care in the pharmaceutical industry." *Cason* at 35 (quoting *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191 (S.D.N.Y. 2009)); *see also Tillman*, 2015 WL 1456657 at *16. Further, because Plaintiffs are not asserting a claim for fraud on the FDA, such opinions would not run afoul of preemption law or infringe upon the jury's role in determining the ultimate issue in this case. *See Cason* at 35-36. Accordingly, as in *Cason* and *Tillman*, the Court will permit Hyman to testify regarding the regulatory process by which medical devices like the

G2 filter are brought to market, as well his opinions as to whether Bard complied with the FDA regulatory requirements applicable to the G2 filter.  However, also as in *Cason* and *Tillman*, the Court will not permit Hyman to opine as to whether Bard should have done more than was required by FDA regulations to address the hazards of the G2 filter.

### 4. *Opinions regarding Bard's corporate documents and state of mind*

Bard argues that Hyman's summaries of Bard's internal corporate documents, along with his testimony as to Bard's knowledge, intent, or state of mind, must be excluded because they are not helpful to the finder of fact.  The Court agrees.

To begin with, Hyman may not testify as to Bard's knowledge, intent, or state of mind because such testimony invades the province of a jury, which is capable of deciding such matters without an expert's help.  *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).  As noted in *Cason*, "the jury should hear and/or see firsthand any relevant evidence pertaining to the Defendant's intent.  Then the jury . . . should consider the facts and make its own determination regarding Defendant's intent."  *Cason* at 37-38 (quotation marks and citation omitted).

Hyman's testimony summarizing Bard's documents is likewise improper.  Plaintiffs contend that Hyman's characterization of Bard's documents is non-speculative and accurate. Regardless of the accuracy of Hyman's characterization, however, such testimony must be excluded because "[a]n expert cannot be presented to the jury [] for the purpose of constructing a factual narrative based upon record evidence."  *In re Fosamax*, 645 F. Supp. 2d at 192 (quotation marks and citation omitted).  Rather, the jury may consider only the underlying evidence itself, which should be presented directly to the jury through percipient witnesses and exhibits.  *See In re Rezulin*, 309 F. Supp. 2d at 551.  The Court will, therefore, limit Hyman's commentary on any

documents and exhibits in evidence "to explaining the regulatory context in which they were created, defining any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience or specialized knowledge." *Tillman*, 2015 WL 1456657 at *17 (quoting *Cason* at 39) (quotation marks omitted).

### B.     Robert Ritchie

Ritchie opines primarily as to the causes of fracture in the G2 filter, which include manufacturing and design defects as well as migration, perforation, and tilt. Ritchie also opines as to the causes of perforation by the G2 filter.

#### 1.     *Opinions regarding causes of fracture of the G2 filter*

Bard concedes that Ritchie is qualified to testify competently regarding the G2 filter's propensity to fracture, and that the methodology by which he reached his fracture opinions is sufficiently reliable. Bard argues that Ritchie's fracture opinions, however, would not assist the trier of fact in understanding the evidence or in determining a fact in issue. Specifically, Bard contends that Ritchie's fracture opinions do not "fit the facts of this case" because the device implanted in Ms. Ocasio did not fracture. Bard, accordingly, seeks to exclude Ritchie's opinions under *Daubert* or, alternatively, Federal Rule of Evidence 403, which permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

The Court finds that Ritchie's fracture opinions should not be excluded on the basis of *Daubert*, because they would be helpful to the trier of fact. For example, Ritchie's opinion that perforation increases the chance of fracture is clearly relevant to the injury suffered by Ms. Ocasio, including the need for ongoing medical monitoring. The fact that Ritchie was unable to establish the increase in likelihood of fracture due to perforation to a reasonable degree of engineering

8

certainty does not warrant the exclusion of these opinions under *Daubert*—they need only be "helpful" to the trier of fact. *See Briscoe v. White*, Case No. 03-cv-154, 2004 WL 5488228, at *2 (M.D. Fla. May 24, 2004) ("absolute certainty is not required").

The Court recognizes that the wholesale introduction of Ritchie's fracture opinions, many of which appear, at least facially, to be tangential to the issues presented in this case, poses a potential risk of unfair prejudice to Bard. The Court, however, will consider any requests to preclude specific testimony through either motions in limine or objections at trial. *Accord Calta v. N. Am. Arms, Inc.*, Case No. 05-cv-1266, 2008 WL 6839018, at *1-2 (M.D. Fla. Mar. 17, 2008). Accordingly, the Court will deny Bard's *Daubert* challenge to Ritchie's fracture opinions.

### 2. *Opinions regarding causes of perforation by the G2 filter*

In Appendix I to his report, Ritchie opines that the same factors that result in a high incidence of fracture also likely caused perforation by Ms. Ocasio's filter. *See* Doc. 51-1 ("Ritchie Rpt.") at 22 (opining that "a lack of proper chamfering . . . and a lack of an undamaged surface from surface gouges and grinding and draw marks . . . coupled with poor mechanical design, limited stress analysis, and an inadequate assessment of their fatigue resistance . . . likely rendered Ms. Ocasio's filter unable to withstand the normal physiological stresses exerted upon it within the human body, causing specific problems of perforation the struts [sic]").

Bard challenges this specific opinion on the grounds that it is not the product of reliable scientific methodology and is not based upon sufficient data. The Court agrees. As noted by the court in *Tillman*, even accepting the assumption that Ms. Ocasio's filter has the same surface defects and lack of chamfering present in the other filters examined by Ritchie, Ritchie offers nothing more than his own *ipse dixit* to conclude that these conditions also cause tilt, migration, and perforation. *See* Doc. 66 at 13 (asserting vaguely that Ritchie's opinions as to the causes of

9

perforation stem from his "extensive training, knowledge and experience"). As the Eleventh Circuit has cautioned, courts must be wary of leaping from an accepted scientific premise to an unsupported one. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1314 (11th Cir. 1999). The Court, therefore, will exclude this particular opinion only. *Accord Tillman*, 2015 WL 1456657 at *8.

### C. Matthew Begley[2]

Begley conducted a theoretical and computational stress/strain analysis of the G2 filter, and opines as to the implications of stress and strain on the fracture and fatigue of the G2 filter. Begley also opines that Bard failed to adequately test and design the G2 filter for perforation, tilt, and migration. Begley finally opines that Bard failed to exert sufficient control over the manufacturing process for the G2 filter, resulting in significant variations between each filter. In opining on these issues, Begley characterizes Bard's behavior as, *inter alia*, "reckless," "incompetent," "negligent," "misleading," and "unethical."

#### *1.  Opinions regarding manufacturing and qualify control for the G2 filter*

Bard argues that Begley is not qualified to opine as to the adequacy of its manufacturing process and quality control for the G2 filter. Bard argues that these opinions should also be excluded because they are not supported by sufficient data or reliable methodology. The Court agrees.

To begin with, the Court finds that Begley is not qualified to offer opinions as to Bard's manufacturing process and/or quality control. Plaintiffs note that Begley holds a doctorate degree

---

[2] Matthew Begley and Robert McMeeking submitted a joint expert report. *See* Doc. 46-2 ("Begley Rpt."). However, Plaintiffs have since withdrawn McMeeking as a testifying expert, *see* Doc. 116, so the discussion herein pertains only to Begley. In any case, Begley and McMeeking share the same opinions. *See* Doc. 46-4 ("McMeeking Dep.") at 43-44, Doc. 46-5 ("Begley Dep.") at 15-16.

in Mechanical Engineering, is a Professor of Mechanical Engineering and Professor of Materials at the University of California, Santa Barbara, and has performed extensive research into problems of mechanical failure in a wide range of structural components. However, although Plaintiffs have established Begley's expertise in relation to his opinions on the structural integrity of the G2 filter, they have set forth no evidence that Begley has any training or professional experience in manufacturing techniques or manufacturing quality control measures. These fields are not so closely related such that expertise in one would necessarily establish expertise in the other. *Compare Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (finding an experienced professional economist with a substantial background in estimating damages qualified to offer expert testimony on the economic losses suffered by the plaintiffs as a result of defendants' fraudulent real estate venture, even though the proffered expert lacked real estate development experience).

Moreover, Begley's opinions appear to rest solely on others experts' observations of variability between the filters and his review of certain of Bard's internal documents that generally describe Bard's manufacturing controls. Begley did not conduct any actual tests to verify that these manufacturing controls would lead to the observed variability. Begley has also failed to articulate any scientific or objective bases for his methodology. And, at the hearing, Begley testified that he could not recall if he even reviewed the actual specifications that describe the manufacturing process for the G2 filter. Plaintiffs have therefore failed to demonstrate that Begley's manufacturing opinions are the product of sufficient data and reliable methodology.

Because Plaintiffs have failed to carry their burden of demonstrating that Begley's manufacturing opinions satisfy the *Daubert* standard, the Court will exclude these opinions.

        2.      *Opinions regarding stress/strain analysis*

Bard does not challenge the sufficiency of Begley's qualifications, data, or methodology in relation to his opinions on the effects of stress and strain upon the fatigue and fracture of the G2 filter. Rather, similar to its challenge to Ritchie's fracture opinions, Bard contends that Begley's stress/strain opinions are not helpful to the finder of fact because Ms. Ocasio's filter did not fracture. *See* Doc. 46 at 15. As with Ritchie's fracture opinions, however, the Court finds that Begley's stress/strain opinions would assist the trier of fact. These opinions, like Ritchie's fracture opinions, are relevant, *inter alia*, to the damages suffered by Ms. Ocasio, including the need for ongoing medical monitoring. *See* Section III.B.1, *supra*. The Court, therefore, will deny Bard's motion to exclude these opinions.

### 3. Opinions regarding adequacy of Bard's testing

Bard likewise challenges as unhelpful Begley's opinion that Bard failed to adequately test the G2 filter's design for the risk of perforation, tilt, and migration, on the ground that Begley cannot identify any specific defect that more likely than not caused Ms. Ocasio's filter to perforate. The Court disagrees that Begley's testing opinions should be excluded for this reason. There is no requirement that Plaintiffs or their experts establish that any one specific defect caused Ms. Ocasio's filter to perforate. Rather, Begley's opinion that the combination of defects together more likely than not caused the perforation sufficiently establishes the relevancy of his testing opinion.

Moreover, Begley's opinions regarding the inadequacy of Bard's testing would assist the jury in determining the ultimate fact of whether the filter was defectively designed and/or whether Bard's warnings were sufficient. *See Adams v. G.D. Searle & Co., Inc.*, 576 So. 2d 728, 730-31 (Fla. 2d DCA 1991) ("The duty to test . . . is a subpart of a manufacturer's duty to design a product with reasonable care, and [] is subsumed in the plaintiffs' claims for defective design and failure

to warn."). The fact that Begley does not offer an opinion on the ultimate issue itself is not a reason to exclude the testimony; his testimony need only be "helpful." *See City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) ("[The] data and testimony need not prove the plaintiffs' case by themselves; they must merely constitute one piece of the puzzle that the plaintiffs endeavor to assemble before the jury."). The Court, therefore, will not exclude Begley's testing opinions. *Accord Tillman*, 2015 WL 1456657 at *10.

### 4. *Characterization of Bard's conduct*

Bard challenges Begley's choice of vocabulary in characterizing its conduct as, *inter alia*, "negligent," "incompetent," and "reckless," and "unethical" and "misleading." The Court agrees that certain of these characterizations are improper and must be excluded.

Specifically, the Court agrees that Begley's characterization of Bard's behavior as "negligent" and "reckless" is improper. It is well-established that a testifying expert may not offer legal conclusions. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n. 8 (11th Cir. 2005) ("testifying agents may not offer legal conclusions"). Plaintiffs argue, and Begley testified, that he did not use those words in any legal sense, but rather in an engineering (or vernacular) sense. Nevertheless, it is undisputed that these words carry a specialized meaning in the law different from that present in the vernacular. Under these circumstances, precluding Begley from using these terms is proper. *See Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) (a court should exclude terms that have a "separate, distinct and specialized meaning in the law different from that present in the vernacular"); *In re Rezulin*, 309 F. Supp. 2d at 541, 547 ("[The expert's] opinion that [defendant's] conduct with respect to clinical trial data potentially constituted 'negligence' or 'something more serious' is excluded for the additional reason that it impermissibly embraces a legal conclusion."); *accord Tillman*, 2015 WL 1456657 at *13.

On the other hand, the Court finds no basis to exclude Begley's use of the word "incompetent" to characterize Bard's testing protocol. "Incompetence" does not carry a distinct legal definition and is not contingent on a legal standard of care. Rather, Begley uses this word only in relation to the principles of science and engineering, areas in which Begley undisputedly qualifies as an expert. Moreover, such testimony would assist the trier of fact in determining whether Bard breached its duty of care. The Court, therefore, will not exclude this opinion. *Accord Tillman*, 2015 WL 1456657 at *13.

Begley characterizes Bard's claim that G2 filters are twelve times more fatigue resistant than Recovery filters to be "unethical" and "misleading." The Court agrees with Bard that Begley's characterization of Bard's behavior as "unethical" is impermissible. To begin with, Plaintiffs offer nothing that would establish Begley's expertise in the field of ethical or professional standards in the medical device industry. Further, there is no evidence that this opinion is reliable. Indeed, Begley does not identify the ethical or professional standards upon which he bases his opinion. It appears that Begley's ethics opinion, like Hyman's design and testing opinions, is founded only upon his own subjective ideas on how a medical device manufacturing company should act. *Accord* Section III.A.1, *supra*. Finally, it is unclear to the Court how Begley's ethics opinion would assist the trier of fact. Begley's ethics opinion, therefore, must be excluded.

However, the Court will permit Begley to opine that it was "misleading" for Bard to make such a claim. Such an opinion does not carry a distinct legal meaning, and does not implicate impermissible subject matter such as Bard's knowledge or state of mind. Moreover, this opinion is otherwise admissible under *Daubert*. Begley reviewed the testing done to support Bard's claim, and determined that Bard's claim was misleading based on his analysis of what the testing actually

showed. Begley's opinion as to the accuracy of Bard's claim falls within the scope of his expertise and would be helpful to a fact finder. The Court, therefore, will not exclude this opinion. *Accord In re Seroquel*, 2009 WL 3806436, at *8 (permitting expert testimony as to the accuracy and adequacy of a drug warning label); *Tillman*, 2015 WL 1456657 at *14.

## IV. CONCLUSION

It is hereby **ORDERED**:

1. Bard's Motion to Exclude the Opinions of William A. Hyman (Doc. 45) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Motion is **GRANTED** to the extent set forth in the body of this Order, and otherwise **DENIED**.

2. Bard's Motion to Exclude the Opinions of Robert McMeeking and Matthew Begley (Doc. 46) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Motion is **GRANTED** to the extent set forth in the body of this Order, and otherwise **DENIED**.

3. Bard's Motion to Exclude the Opinions of Robert Ritchie, Ph.D. (Doc. 51) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Motion is **GRANTED** to the extent set forth in the body of this Order, and otherwise **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on May 4, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any